IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUAN MANUEL DELGADO,<br><br>Plaintiff,<br><br>v.<br><br><br>MARKWAYNE MULLIN,<br>SECRETARY, DEPARTMENT OF<br>HOMELAND SECURITY; ET AL.,<br><br>Defendants. | CIV. NO. 24-00560 JMS-RT<br><br>ORDER GRANTING MOTION TO<br>DISMISS, ECF NO. 66 |

## ORDER GRANTING MOTION TO DISMISS, ECF NO. 66

## I. INTRODUCTION

In this immigration case, Plaintiff Juan Manuel Delgado ("Delgado" or "Plaintiff") filed a petition for de novo review of the denial of his N-400 Application for Naturalization under § 310(c) of the Immigration and Nationality Act ("the Act" or "INA"), 8 U.S.C. § 1421(c), and the Administrative Procedure Act, 5 U.S.C. § 702 et seq.  ECF No. 64 (Third Amended Petition, or "TAP"). Before the court is a motion to dismiss the TAP filed by Markwayne Mullin, Secretary of the Department of Homeland Security;[1] Kika Scott, Director, United

---

[1]  Markwayne Mullin replaced Kristi Noem in March 2026 as Secretary of Homeland Security; he is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

States Citizenship and Immigration Services ("USCIS"); Anne Corsano, District Director, USCIS; and Jayci Roney, Honolulu Field Office Director, USCIS (collectively, "Defendants"). Defendants assert two grounds for dismissal: (1) Delgado's failure to exhaust administrative remedies; and (2) the TAP's failure to state a claim upon which relief may be granted because Delgado was not a lawful permanent resident—a prerequisite for naturalization. *See* ECF No. 66 ("Motion to Dismiss").

For the following reasons, the court determines that Delgado's failure to exhaust is not a jurisdictional requirement and is excused on the ground of futility. The court also concludes, however, that because (1) Delgado's N-400 Application was denied on the basis that he was not lawfully admitted to the United States for permanent residence, and (2) that determination is not reviewable here, there is no relief that the court can provide under § 1421(c).

## II.  BACKGROUND

### A.    Delgado's Petition for Review

The court sets forth pertinent USCIS events and decisions in the following chart:[2]

---

[2] The parties do not contest these facts, which are based on the TAP and documents attached to the TAP. In any event, the court may consider documents attached to the complaint and documents incorporated into the complaint by reference without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain

(continued . . . )

| Oct. 5, 2001 | Delgado, a national and citizen of Argentina, enters the United States under a B-2 Visa.[3]  ECF No. 64 (TAP ¶¶ 19, 20). |
|---|---|
| Mar. 26, 2008 | Delgado marries Nara Marie Jirik ("Jirik"), a United States citizen.  *Id.* (TAP ¶ 21). |
| Oct. 21, 2009 | USCIS approves Jirik's I-130 Petition for Alien Relative ("I-130 Petition").  *Id.* (TAP ¶ 22). |
| Nov. 13, 2009 | USCIS approves Delgado's I-485 Application to Register as a Legal Permanent Resident ("LPR") or Adjust Status, resulting in conditional permanent resident ("CPR") status.[4]  *Id.* (TAP ¶ 34); *id.* at PageID.360. |

documents as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  A court "may assume that [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *Ritchie*, 342 F.3d at 908) (internal quotation marks omitted).  However, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.  This admonition is . . . consistent with the prohibition against resolving factual disputes at the pleading stage."  *Khoja*, 899 F.3d at 1003.  For background purposes, the court considers USCIS decisions and documents referenced in the TAP.  *Ritchie*, 342 F.3d at 908 (observing that a document may be incorporated by reference into a complaint if the plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim").

[3]  The B-2 nonimmigrant designation refers to an "alien . . . having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure."  8 U.S.C. § 1101(a)(15)(B); *see also* 8 C.F.R. § 214.1(a)(1)(i), (a)(2).

[4]  8 U.S.C. § 1255 governs the adjustment of status of nonimmigrant to that of a person admitted for permanent residence.  A conditional permanent resident ("CPR") is "an alien who has been lawfully admitted for permanent residence" and is subject to certain conditions and responsibilities.  8 C.F.R. § 216.1.

3

| Nov. 15, 2011 | Delgado and Jirik file a joint I-751 Petition to Remove Conditions on Residence ("joint I-751 Petition").[5]  *Id.* (TAP ¶ 35); *id.* at PageID.360–361. |
|---|---|
| Sept. 4, 2012 | Jirik obtains a divorce in Hawaii state court, dissolving her and Delgado's marriage.  *Id.* (TAP ¶ 60). |
| Mar. 1, 2017 | Pending the joint I-751 Petition, Delgado files an N-400 Application for Naturalization to become a United States citizen ("N-400 Application" or "naturalization application").  *Id.* (TAP ¶ 38); *id.* at PageID.343. |
| May 25, 2018 | Delgado and counsel appear for an interview for Delgado's N-400 Application and the joint I-751 Petition. They orally request a waiver based on Delgado having entered in good faith into a marriage with Jirik that was terminated through divorce ("first I-751 waiver").[6]  *Id.* at PageID.355. |

---

[5]  A CPR who obtained his status through marriage of less than two years to a United States citizen must file an I-751 petition to remove the conditions on his residence. 8 Immigration Law Service 2d PSD Selected DHS Document 2543 (Oct. 9, 2009); *see also generally* 8 U.S.C. § 1186a (governing CPR status for certain alien spouses).

[6]  USCIS Policy Memorandum PM-602-0168 addresses when USCIS officers may consider interview waivers:

> To avoid having their status terminated after two years, conditional permanent residents must request that USCIS remove the conditions on their lawful permanent resident status by filing Form I-751 either jointly with their petitioning spouse . . . or individually through a request for a waiver of the joint filing requirement (waiver request). . . .

8 Immigration Law Service 2d PSD Selected DHS Document 2586 (Nov. 30, 2018) (citing Immigration and Nationality Act ("the Act") § 216(d)(3) and 8 C.F.R. § 216.4(b)(1)).  In addition, 8 C.F.R. § 216.5(a) provides:

> A conditional resident alien who is unable to meet the requirements under section 216 of the Act for a joint petition for removal of the conditional basis of his . . . permanent resident status may file Form I–751, Petition to Remove the Conditions on Residence, if the alien requests a waiver, was

(continued . . . )

| Nov. 27, 2018 | USCIS denies the joint I-751 Petition without prejudice, reviewable by an immigration judge.  USCIS terminates Delgado's CPR status due to his failure to prove that his marriage to Jirik was entered into in good faith, and that Delgado deliberately misrepresented information to obtain an immigration benefit.  *Id*. at PageID.357, 363. |
|---|---|
| Apr. 22, 2019 | USCIS denies Delgado's N-400 Application for his failure to (1) establish that he was lawfully admitted for permanent residence, and (2) demonstrate good moral character by submitting false testimony to obtain an immigration benefit.  *Id*. (TAP ¶ 40); *id*. at PageID.363. |
| May 16, 2019 | Delgado files an N-336 Request for a Hearing on a Decision in Naturalization Proceedings.  *Id*. (TAP ¶ 41).<br><br>* * *<br><br>USCIS schedules the N-336 hearing for January 26, 2021. USCIS reschedules the N-336 hearing to April 20, 2021; Delgado fails to appear.  *Id*. at PageID.347. |
| May 12, 2021 | USCIS again denies Delgado's N-400 Application, in part, for Delgado's failure to appear at the April 20, 2021 N-336 hearing and for failure to establish that he was lawfully admitted for permanent residence.  *Id*. (TAP ¶ 16) (also noting that Delgado's failure to appear was due to USCIS error); *id*. at PageID.347. |
| June 2, 2021 | USCIS reopens Delgado's N-400 Application.  *Id*. (TAP ¶ 42). |
| June 16, 2021 | Delgado appears for the N-400 Application interview.  *Id*. PageID.363. |

not at fault in failing to meet the filing requirement, and the conditional resident alien is able to establish that . . . [t]he marriage upon which his . . . status was based was entered into in good faith by the conditional resident alien, but the marriage was terminated other than by death . . . .

| June 30, 2021 | USCIS issues Delgado a Notice to Appear,[7] places him in removal proceedings before an immigration judge, and charges him as an alien who was admitted as a CPR whose status was terminated.  *Id*. at PageID.363–364. |
|---|---|
| Jan. 26, 2022 | USCIS denies the reopened N-400 Application "in anticipation of the [immigration judge's] review of [Delgado's] Form I-751 denial to resolve issues affecting [his] eligibility."  *Id*. at PageID.364. |
| June 7, 2022 | Delgado files another I-751 waiver based on having entered in good faith into a marriage with Jirik that was terminated through divorce ("second I-751 waiver").  *Id*. at PageID.359, 364. |
| July 19, 2022 | Despite the opportunity for immigration court review of the denial of the first I-751 waiver, Delgado files a "Joint Motion to Dismiss removal proceedings," which the immigration court grants.  *Id*. at PageID.364, 367. |
| Nov. 29, 2024 | USCIS denies Delgado's second I-751 waiver for failure to submit additional evidence to overcome the denial of the first I-751 waiver.  The denial also states:  "If your conditional permanent resident status has not already been terminated, that status is now terminated."  *Id*. at PageID.351, 364. |
| Feb. 5, 2025 | USCIS reopens Delgado's second I-751 waiver so that he could submit new evidence.  *Id*. at PageID.364. |
| Feb. 10, 2025 | USCIS issues Delgado a Request for Evidence ("RFE") to provide yet another opportunity to submit evidence to show that he and Jirik entered the marriage in good faith to support Deglado's second I-751 waiver.  *Id*. |

---

[7] A Notice to Appear is a formal charging document for removal proceedings.  *See, e.g.*, *United States v. Hovsepian*, 359 F.3d 1144, 1149 (9th Cir. 2004) (explaining same); *see also Laing v. Ashcroft*, 370 F.3d 994, 996 (9th Cir. 2004).

| July 2, 2025 | USCIS interviews Delgado at the Honolulu Field Office pertaining to the second I-751 waiver, having determined that the additional evidence Delgado submitted in response to the RFE still did not overcome the denial of the second I-751 waiver. *Id*. (TAP ¶ 91); *id*. at PageID.365. |
|---|---|
| Dec. 22, 2025 | USCIS again denies Delgado's second I-751 waiver. *See generally id*. at PageID.359–371; *id*. (TAP ¶¶ 68, 69). |

**B.    Procedural Background**

On December 20, 2024, Delgado commenced this civil action under 8 U.S.C. § 1421 for de novo review of the denial of his N-400 Application. *See* ECF No. 1.[8]  Defendants filed the instant Motion to Dismiss on February 20, 2026, ECF No. 66, and filed an errata on April 8, 2026, ECF No. 71.  Delgado filed an Opposition on April 17, 2026, ECF No. 72, and Defendants filed a Reply on April 29, 2026, ECF No. 73.  The court heard oral argument on May 13, 2026, and both parties filed supplemental briefing—Defendants on May 20, 2026, ECF No. 77, and Delgado on May 26, 2026, ECF No. 79.

**III.  STANDARD OF REVIEW**

"A failure to state a claim may result from the lack of a 'cognizable

---

[8]  The TAP is technically Delgado's fourth Petition for Review ("Petition"):  On December 20, 2024, he filed the first Petition, ECF No. 1 at PageID.2; on December 27, 2024, an amended Petition, ECF No. 6 at PageID.34; on April 10, 2025, a second amended Petition, ECF No. 24 at PageID.183; and on January 20, 2026, the TAP, ECF No. 64 at PageID.305 (all Petitions seeking § 1421(c) de novo review of USCIS' denial of Delgado's naturalization application).  The court had continued a prior motion to dismiss filed in August 2025 to allow a ruling on an I-751 Petition, ECF No. 61, and the TAP was filed by agreement after the December 22, 2025 decision by USCIS on that Petition.  *See* ECF No. 62.

legal theory' or from 'an absence of sufficient facts alleged to support a cognizable legal theory.'"  *Pell v. Nuñez*, 99 F.4th 1128, 1133 (9th Cir. 2024) (quoting *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)).  A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  And in reviewing a motion to dismiss for failure to state a claim, courts "accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party."  *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013)).

## IV.  <u>DISCUSSION</u>

Defendants argue that Delgado was required to exhaust administrative remedies, but failed to do so.  Alternatively, Defendants argue that even if Delgado was not required to exhaust administrative remedies, the court should dismiss the TAP because Delgado was not lawfully admitted as a permanent resident when his N-400 Application was denied, and thus he was not eligible for naturalization.  As set forth below, the court finds that the exhaustion requirement is prudential, and requiring Delgado to exhaust would be futile.  Turning to the second argument, the court agrees with Defendants that because

8

Delgado's naturalization application was denied based on the termination of his lawful permanent resident status, and because the court cannot review that termination under § 1421(c), the TAP fails to state a claim. Stated differently, because the TAP itself alleges facts showing that Delgado was ineligible for naturalization, it fails to allege facts that support a cognizable legal theory.

The court addresses each argument in turn.

## A. Exhaustion of Administrative Remedies

### 1. Legal Framework

Section 1421(c) provides:

> A person whose application for naturalization under this subchapter is denied, *after a hearing before an immigration officer under section 1447(a) of this title*,[9] may seek review of such denial before the United States district court for the district in which such person resides . . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C. § 1421(c) (emphasis added); *see also* 8 C.F.R. § 336.9(d) ("A USCIS determination denying an application for naturalization under section 335(a) of the Act shall not be subject to judicial review until the applicant has exhausted those administrative remedies available to the applicant under section 336 of the Act.").

---

[9] 8 U.S.C. § 1447(a) provides: "If, after an examination under section 1446 of this title, an application for naturalization is denied, the applicant may request a hearing before an immigration officer."

Exhaustion serves "two key institutional interests": (1) "protecting administrative agency authority"; and (2) "promoting judicial efficiency." *League of United Latin Am. Citizens v. Wheeler*, 899 F.3d 814, 826 (9th Cir. 2018) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds as stated in Booth v. Churner*, 532 U.S. 731 (2001)); *see also Santos-Zacaria v. Garland*, 598 U.S. 411, 418 (2023) ("[E]xhaustion promotes efficiency, including by encouraging parties to resolve their disputes without litigation."). Furthermore, exhaustion is the general rule: "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *United States v. L.A. Trucker Truck Lines, Inc.*, 344 U.S. 33 (1952)) (emphasis and quotation marks omitted).

"Administrative exhaustion can be either statutorily required or judicially imposed as a matter of prudence." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007). "If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). This discretion, however, is not unfettered. *Id.* (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). "Prudential limits, like jurisdictional limits . . . are ordinarily not

optional."  *Castro-Cortez*, 239 F.3d at 1047; *see also Laing*, 370 F.3d at 997–98.

If, on the one hand, a court finds exhaustion jurisdictional, and a plaintiff has

failed to exhaust, that court may not retain jurisdiction over the case.  *See Puga*,

488 F.3d at 815.  On the other hand, if a court determines that exhaustion is

prudential, that court has discretion to retain jurisdiction if the circumstances fall

within an exception to the general rule requiring exhaustion.  *See McCarthy*, 503

U.S. at 146.  Those circumstances include "where administrative remedies are

inadequate or not efficacious, pursuit of administrative remedies would be a futile

gesture, irreparable injury will result, or the administrative proceedings would be

void."  *Laing*, 370 F.3d at 1000 (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d

685, 688 (9th Cir. 1981) (quotation marks omitted)).

Here—on the question of whether exhaustion is jurisdictional or

prudential—Defendants claim a "tension" exists between (1) *Eche v. Holder*, 694

F.3d 1026, 1028 (9th Cir. 2012), which stated that the "statutory provision for

review of [USCIS'] denial of naturalization applications is permissive, rather than

mandatory," and (2) an earlier statement in *United States v. Hovsepian*, 359 F.3d

1144, 1162 n.15 (9th Cir. 2004), that under § 1421(c), an "[u]nsuccessful

[applicant for naturalization] *must* first take an administrative appeal . . . before

seeking judicial review."  (Emphasis added).

11

The court finds no tension, for several reasons. First, *Hovsepian's* statement that an unsuccessful naturalization applicant "must" file an administrative appeal prior to judicial review is dicta. The appellants in *Hovsepian* sought district court review pursuant to 8 U.S.C. § 1447(b) (applicable when the agency fails to make a decision regarding a naturalization application within 120 days of an applicant's first interview) and referenced § 1421(c) only in a discussion of statutory context. *See id*. at 1161–63. Second, in contrast, *Eche* "squarely addressed the question of whether exhaustion of administrative remedies is prudential or jurisdictional" under § 1421(c), concluding that it was prudential. *See Sheikh v. Lynch*, 2015 WL 7731802, at *3 (N.D. Cal. Dec. 1, 2015) (characterizing *Hovsepian* as dicta and *Eche* as controlling) (citing *Eche*, 694 F.3d at 1028).

Third, even if some uncertainty existed in Ninth Circuit case law, this court would independently conclude that Congress has not clearly stated that § 1421(c) is a jurisdictional provision. *See Santos-Zacaria*, 598 U.S. at 416 ("We treat a rule as jurisdictional only if Congress clearly states that it is.") (quoting *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022), and *Arbaugh v. Y & H Corp*., 546 U.S. 500, 515 (2006) (internal quotation marks omitted)). Analyzing 8 U.S.C. § 1252(d)(1), which states that "[a] court may review a final order of removal only if . . . the alien has exhausted all

12

administrative remedies available to the alien as of right," *Santos-Zacaria* applied

*Arbaugh*'s "clear-statement" rule and determined that § 1252(d)(1) incorporated a

prudential—not jurisdictional—exhaustion requirement. *Id.* at 416–19. Here,

like in § 1252(d)(1), Congress did not include the sort of clear statement in

§ 1421(c) that makes it a jurisdictional rule. The court therefore determines that

§ 1421(c)'s exhaustion requirement is prudential, not jurisdictional.

### 2.      *Requiring Delgado to Exhaust Would Be Futile*

Defendants assert that Delgado should be required to file an N-336

request for administrative review of the January 20, 2022 denial of naturalization.

*See* ECF No. 71-1 at PageID.426.[10] Delgado argues that "it would be futile to

seek another N-336 administrative review over the exact same issues of the two

previous denials when the facts have not changed." ECF No. 72 at PageID.448.

Based on a review of the December 22, 2025 decision denying Delgado's second

I-751 waiver, the court agrees.

The December 22, 2025 decision recounts the entire timeline and

includes the underlying reason for denying Delgado's N-400 Applications *and* I-

751 Petitions—that Delgado essentially has failed to present sufficient evidence

showing that the qualifying marriage to Jirik was entered in good faith. *See* ECF

---

[10] Although the TAP suggests that an N-336 was filed in relation to the January 20, 2022 denial of naturalization, Delgado admitted during oral argument that no such N-336 was filed. *See also* ECF No. 75.

No. 64 at PageID.363 (explaining USCIS' denial of the initial, joint I-751 Petition and Delgado's N-400 Application for lack of credible evidence that his marriage with Jirik was entered into in good faith); *id.* at PageID.364 (explaining denial of second waiver due to failure to overcome denial of joint I-751 Petition); *id.* at PageID.365 (describing referral to Honolulu Field office due to additional evidence not overcoming previous I-751 Petition denial); *id.* at PageID.367–370 (denial of second waiver because Delgado "primarily submitted evidence already in the record").  Based on this record, the court determines that the filing of an N-336 request would not yield different results.  In essence, there would be nothing new to review because Delgado is not an LPR, and thus is not eligible for naturalization.  *See, e.g.*, *Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995) (stating that the futility exception to exhaustion is "designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail"); *Elias v. Knight*, 817 F. Supp. 3d 986, 997 (D. Idaho 2025) (observing that the futility exception applies when an agency "has already staked out its position on the relevant question, making the outcome of any administrative process a foregone conclusion").

**B.    Failure to State a Claim Based on Delgado's Lack of Permanent Resident Status**

Defendants argue that the TAP demonstrates that Delgado "does not currently have permanent resident status—whether it be conditional or not.  As

14

such, Delgado is ineligible for naturalization."  ECF No. 71-1 at PageID.430.

Delgado does not dispute that he lacks permanent resident status, but argues that

"the denial of the I-751 and the denial of Plaintiff's N-400 naturalization

application can both be reviewed de novo by this Court."  ECF No. 72 at

PageID.440.  In reply, Defendants argue that the review of an I-751 petition must

be made before an immigration judge, not this court.  ECF No. 73 at PageID.473.

The court agrees with Defendants.

To explain its ruling, the court begins with an overview of relevant

naturalization law, and then turns to its analysis.

### 1.   *Relevant Naturalization Law*

No person has a right to naturalization "unless all statutory

requirements are complied with," *United States v. Ginsberg*, 243 U.S. 472, 475

(1917), and "there must be strict compliance with all the congressionally imposed

prerequisites to the acquisition of citizenship," *Fedorenko v. United States*, 449

U.S. 490, 506 (1981).  To be eligible for naturalization, an applicant must fulfill

the following criteria:

> (1) immediately preceding the date of filing the [N-400
> Application . . . , have resided] continuously, after being
> *lawfully admitted for permanent residence*, within the
> United States for at least five years . . . ;
>
> (2) [have resided] continuously within the United States
> from the date of the application up to the time of
> admission to citizenship; and

> (3) during all the periods referred to in this subsection
> [have] been and still [be] a person of good moral
> character . . . .

*Abghari v. Gonzales*, 596 F. Supp. 2d 1336, 1345 (C.D. Cal. 2009) (quoting

8 U.S.C. § 1427(a) (emphasis added)); *see also* 8 U.S.C. § 1429; 8 C.F.R.

§ 316.2(a)(1)–(7).  Under this framework, an "applicant must be lawfully admitted

for permanent residence in order to be naturalized."  *Turfah v. USCIS*, 845 F.3d

668, 671 (6th Cir. 2017).  Stated differently, "being lawfully admitted for

permanent residence is a prerequisite to naturalization."  *Al-Saadoon v. Barr*, 973

F.3d 794, 801 (8th Cir. 2020); *see also Saliba v. Att'y Gen. of United States*, 828

F.3d 182, 191 (3d Cir. 2016) (same).

The statute defines the term "lawfully admitted for permanent

residence" as "having been lawfully accorded the privilege of residing

permanently in the United States as an immigrant in accordance with the

immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).  An

applicant must also prove that he was granted LPR status "in substantive

compliance with the immigration laws"; it is not enough that an applicant simply

show that he has been granted LPR status.  *Injeti v. USCIS*, 737 F.3d 311, 316 (4th

Cir. 2013) (quoting *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir.

2010)) (internal quotation marks omitted); *see also Monet v. I.N.S.*, 791 F.2d 752,

753 (9th Cir. 1986) ("The term 'lawfully' denotes compliance with substantive

16

legal requirements, not mere procedural regularity . . . .") (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).  If an applicant is found not to have complied with the substantive legal requirements, he is not lawfully admitted for permanent residence.  *Shin*, 607 F.3d at 1217.

An "immediate relative" spouse is one of two classes of immigrants subject to a period of "conditional status."[11,12] *Abghari*, 596 F. Supp. 2d at 1346 (quotation marks omitted); *see also* 8 U.S.C. § 1186b(a)(1) ("An . . . alien spouse . . . shall be considered, at the time of obtaining the status as an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis subject to the provisions of this section.").  The Secretary of

---

[11]  An EB-5 immigrant investor is the other class of immigrant subject to conditions under 8 U.S.C. § 1186b(a)(1).

[12]  The regulations define a CPR as

> an alien who has been lawfully admitted for permanent residence within the meaning of section 101(a)(20) of the Act, except that a conditional permanent resident is also subject to the conditions and responsibilities set forth in section 216 or 216A of the Act, whichever is applicable, and part 216 of this chapter.  Unless otherwise specified, the rights, privileges, responsibilities and duties which apply to all other lawful permanent residents apply equally to conditional permanent residents, including but not limited to the right to apply for naturalization (if otherwise eligible), the right to file petitions on behalf of qualifying relatives, the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed . . . .  All references within this chapter to lawful permanent residents apply equally to conditional permanent residents, unless otherwise specified. . . .

8 C.F.R. § 216.1.

Homeland Security reviews an I-751 petition to remove conditions on permanent

resident status and if the Secretary determines that the facts and information in the

petition are true, the Secretary removes "the conditional basis of the alien's status

effective as of the second anniversary of the alien's lawful admission for

permanent residence."  8 U.S.C. § 1186b(c)(3)(B).  Or—if not true—the Secretary

shall "terminate the permanent resident status . . . as of the date of the

determination."  *Id*. § 1186b(c)(3)(C).  Permanent resident status also "may be

terminated before an application to remove conditions is filed or adjudicated."

*Abghari*, 596 F. Supp. 2d at 1346, 1346 n.7 (citing 8 U.S.C. § 1186b(b)(1)).

### 2.      *Analysis*

When an I-751 petition is denied pursuant to INA § 216(c)(3),

8 U.S.C. § 1186a(c)(3)—such as the USCIS' December 22, 2025 denial of

Delgado's I-751 Petition, ECF No. 64 at PageID.359–371—an alien "may request

a review of such determination in a proceeding to remove the alien."[13]  8 U.S.C.

§ 1186a(c)(3)(D); *see also* 8 C.F.R. § 216.3(a) (stating that, upon termination of

CPR status, "the alien may request a review of such determination in removal

proceedings").  This statutory language is clear enough—denial of an I-751

---

[13]  According to the December 22, 2025 decision denying Delgado's I-751 Petition, Delgado was "given an opportunity for review before an Immigration Judge, but instead sought to have the proceedings dismissed rather than proceed with having the [previous] I-751 decision reviewed by in Immigration Court."  ECF No. 64 at PageID.367.

petition may be challenged only through a removal hearing, not by an appeal to the district court. *See, e.g.*, *State v. Su*, 121 F.4th 1, 13 (9th Cir. 2024) ("[W]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.") (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (stating that, under the interpretive maxim of *expressio unius est exclusio alterius*, courts "do not read the enumeration of one case to exclude another unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it"). In immigration matters, Congress has been both specific and clear in its delegation of jurisdiction among immigration judges, district courts, and circuit courts. For example, under the INA's jurisdiction-channeling provisions, the sole means for judicial review of a removal order is a petition filed with a court of appeals. *See Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020). And here, by limiting the review of the denial of an I-751 petition to an immigration judge in a removal proceeding, Congress certainly intended to foreclose such review by a district court, whether as a stand-alone challenge of an I-751 petition denial, or as part of de novo review of a naturalization application under § 1421(c). Thus, it is "fair to suppose" that Congress considered permitting district courts to review denial of an I-751 petition, but said "no to it." *Barnhart*, 537 U.S. at 168.

19

Other courts agree. *See Al-Saadoon*, 973 F.3d at 801 (stating that "§ 1421(c)'s jurisdiction over naturalization claims does not extend to lawful permanent resident status claims" and although petitioners had tried "to incorporate their lawful permanent resident status issue into their request for naturalization, the two are clearly separate requirements"); *see also Bhadmus v. USCIS*, 2016 WL 5946842, at *3 (S.D. Ind. Sept. 30, 2016) ("[T]here is simply no statute authorizing [the] court's review of an I-751 petition. Rather, the immigration laws expressly provide[] that an I-751 decision can only be reviewed during removal proceedings.") (citing 8 U.S.C. § 1186a(c)(3)(D)); *Akpovi v. Douglas*, 2021 WL 1222233, at *6 (D. Neb. April 1, 2021) ("The Court is without authority to review the denial of the I-751."); *Ratcher v. Sec'y of Dep't. of Homeland Sec.*, 2021 WL 8314612, at *2 n.3 (C.D. Ca. Feb. 1, 2021) (noting that the court lacked jurisdiction to "remove the denial of [Plaintiff's] . . . green card renewal") (internal quotation marks omitted); *Howard v. U.S. Dep't of Homeland Sec.*, 2026 WL 1328172, at *4 (D. Kan. May 13, 2026) (stating that the proper forum for review of the denial of an I-751 petition "is in the immigration court before the immigration judge"); *El Tayieb v. Mayorkas*, 743 F. Supp. 3d 44, 60–61 (D.D.C. 2024) (recognizing lack of authority to review "discretionary agency action") (quoting *Al-Saadoon*, 973 F.3d at 802) (quotation marks omitted); *Simaga v. USCIS*, 2022 WL 4133232, at *3–4 (S.D. Ohio Sept. 12, 2022)

(concluding that because the denial of an I-751 petition is reviewable in a removal proceeding, it is not a final agency action under the APA).

Based on this law, the court rejects Delgado's argument that the court can review the denial of his I-751 Petition.  Instead, that decision must be reviewed by an immigration judge in a removal proceeding (and then, if appropriate, appealed to the Ninth Circuit).[14]

Here, Delgado's status changed after he filed the N-400:  USCIS terminated his CPR status.  *See* ECF No. 64 at PageID.357 (November 27, 2018 Notice of Termination of Conditional Resident Status); *see also id.* at PageID. 351 (November 29, 2024 decision advising that "[i]f your [CPR] status has not already been terminated, that status is now terminated").  And as of the termination of his CPR status, Delgado no longer met the first prong of § 1427(a), which conditions eligibility for naturalization on being "lawfully admitted for permanent residence."  8 U.S.C. § 1427(a); *see also Akpovi*, 2021 WL 1222233, at *6 (stating that "the phrase 'lawfully admitted for permanent residence' itself contemplates that [an applicant] have remained in such status at the requisite time—here, at the time USCIS adjudicated his N-400 Application for naturalization"); *accord Ye v. Holder*, 2010 WL 2734815, at *6 (N.D. Cal. July 12, 2010) ("Under this

---

[14] An alien may appeal an immigration judge's decision denying a request to remove conditions on LPR status to a court of appeals under the "Limited Review Provision," 8 U.S.C. § 1252(a)(2)(D).  *See Zia v. Garland*, 112 F.4th 1194, 1199–1200 (9th Cir. 2024).

definition [of 'lawfully admitted for permanent residence' in § 1101(a)(20)], at the time USCIS terminated Plaintiff's conditional permanent resident [status], Plaintiff no longer qualified as a person lawfully admitted for permanent residence.  Because she no longer met that definition, she could not meet this requirement for naturalization . . . , making denial of her [naturalization application] appropriate.")); *see also Onyekaba v. USCIS*, 2016 WL 8225421, at *3 (N.D. Ala. Nov. 9, 2016) (stating "it is not enough for an applicant to satisfy the [LPR] criteria at the time of filing an application; any subsequent change in such status affects eligibility for naturalization as well.  The revocation of petitioner's [LPR] status renders him ineligible for naturalization.") (citation omitted).

Despite this statutory framework, Delgado argues that he "is to [be] considered as a lawfully admitted legal permanent resident for purposes of his naturalization application."  ECF No. 72 at PageID.442 (citing 8 U.S.C. § 1186a(e)).[15]  Delgado appears to be arguing that, because he *applied* for

---

[15]  8 U.S.C. § 1186a(e) provides:

> For purposes of subchapter III, in the case of an alien who is in the United States as a lawful permanent resident on a conditional basis under this section, the alien shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence.

naturalization before his CPR status was terminated, he is legally *eligible* for naturalization.  The court rejects this argument, agreeing with the reasoning in *Akpovi*, 2021 WL 1222233, at *6:

> Akpovi . . . ignores the applicable definitions for the Immigration and Nationality Act which define "lawfully admitted for permanent residence" to mean "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*."  8 U.S.C. § 1101(a)(20) (emphasis added).  Thus, Akpovi's argument that the filing of his N-400 "freezes" his residency status in time is unavailing; the phrase "lawfully admitted for permanent residence" itself contemplates that Akpovi have remained in such status at the requisite time—here, at the time USCIS adjudicated his N-400 Application for naturalization.  Because he no longer met the first prong of § 1427 for having been lawfully admitted for permanent residence, USCIS correctly denied his N-400 application for naturalization.[16]

The termination of Delgado's CPR status while his N-400 Application was pending rendered him ineligible for naturalization, and the court's review authority under § 1421 does not extend to the termination of his CPR status.  In short, the court cannot provide the relief that Delgado seeks—that

---

[16]  Equally unavailing is Delgado's claim that, under 8 U.S.C. § 1429, as long as he entered the country legally under a B-2 tourist visa, he is eligible for naturalization.  *See* ECF No. 72 at PageID.442–443.  Although § 1429 requires an alien to show that he "entered the United States lawfully," it does not suggest in any way that lawful entry is sufficient to qualify for naturalization.  Instead, under § 1427 and § 1429, an applicant for naturalization must be lawfully admitted for permanent residence.  *Turfah v. USCIS*, 845 F.3d 668, 671 (6th Cir. 2017).

is, the TAP fails to allege facts that would support a cognizable claim.  Delgado's TAP is therefore dismissed for failure to state a claim upon which relief can be granted.

## V.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion to Dismiss, ECF No. 66.  The Clerk shall close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 17, 2026.



/s/ J. Michael Seabright

J. Michael Seabright
United States District Judge